Style Definition: Heading 2

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re: Chapter 11

BK4 LLC, Case No. 21-70681-AST

Debtor.
--------------------------------------------------------x

**DEBTOR'S MODIFIED DISCLOSURE STATEMENT PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE**

This Disclosure Statement (the ñDisclosure Statementò) is submitted by the Debtor, BK4 LLC (the ñDebtorò), in support of confirmation and approval of the Debtorôs accompanying Chapter 11 plan of reorganization (ECF #27) (the ñPlanò)[1] pursuant to Sections 1125(b) and 1126 of Title 11 of the United States Code (the ñBankruptcy Codeò).

## I. INTRODUCTION

The Debtor is a real estate developer and the owner of certain residential real properties located at 2, 4 and 6 McGuinness Boulevard, Brooklyn, NY, respectively (collectively, the ñPropertiesò). By early 2020, after several years of construction, the Debtor had completed the development project and was ready to proceed with sales only to see Covid-19 intervene to suspend all activities. The Debtor lost pending buyers and sought a moratorium from its lender through the end of the pandemic. Instead the underlying mortgage note was sold to a private investor in October 2020, which thereafter accelerated the underlying debt retroactive to July 2020 at penal default rate charges. The harsh position taken by the lender left the Debtor with no choice except to seek Chapter 11 relief on April 12, 201. Moreover, the current lender was not receptive to release any units without full payment of all default interest.

[1] Terms defined in the Plan shall have the same meanings for purposes of this Disclosure Statement.

At the time of the Chapter 11 filing, the Debtor had already entered into three separate new contracts (collectively, the ñSale Contractsò) to sell each of the Properties to third party buyers as identified below:

| Address | Purchaser | Purchase Price | Deposit |
| --- | --- | --- | --- |
| 2 McGuinness | BMH Consulting LLC | $2,090,000.00 | $209,000.00 |
| 4 McGuinness | Guang Gao, Nicholas Gao, Tiffany Chu | $2,350,000.00 | $235,000.00 |
| 6 McGuinness | Teemu and Leila Puuito | $1,850,000.00 | $185,000.00 |

Following the Chapter 11 filing, the Debtor has moved for Bankruptcy Court approval of the Sale Contracts in anticipation of confirming the Plan contemporaneously therewith. Copies of the Sales Contracts have been filed with the Court as Exhibits ñAò, ñBò and ñC to the Debtorôs motion to assume Sale Contracts and approve the sales (ECF #21) (the ñSale Motionò).

As noted above, the Properties are subject to a mortgage currently held by a note buyer known as 246 McGuiness Capital LLC (the ñCurrent Lenderò). The Current Lender is the assignee of Emerald Creek Capital 3, LLC (the ñInitial Lenderò), which issued a mortgage in 2019 in the principal amount of $4.5 million with a stated maturity in July 2020.

The Debtor has filed the Plan to implement the sales through a confirmation process. The Plan fundamentally serves as the vehicle for distribution of the net sale proceeds to creditors.

Although the Debtor acknowledges the principal debt owed to the Current Lender, it disputes various charges asserted by the Current Lender, including default interest and late fees. Fundamentally, under the Plan, the Debtor intends to complete the sales and turn the Properties into cash, pay the undisputed portion of the mortgage debt and other administrative expenses, priority and general unsecured claims, and then litigate with the Current Lender over the disputed default interest and late fees on a post-confirmation and post-closing basis.

The Bankruptcy Code is particularly well suited to effectuate the sales under Section 363(b) and (f) as incorporated by Section 1123(a)(5)(D), and Section 365. These provisions include the ability to assume the Sale Contracts and thereby sell the respective Properties free and clear of all claims, liens and interests.

## II. BACKGROUND.

### A. Pre-Petition History of the Properties

The Debtor was organized in November 2013 with the goal of acquiring the Properties and constructing townhouse-style multifamily homes. The project was financed and refinanced from time to time, most recently by the Initial Lender in April 2019 under a $4.5 million mortgage loan that matured on or about July 10, 2020.

Just before the start of the pandemic, the project was virtually complete, and the Debtor was proceeding towards closing the various sales of the units. This would have allowed the Debtor to satisfy the mortgage debt in full prior to maturity. However, with the onset of the Covd-19 virus, all sales activity was effectively put on hold for many months.

The Debtor sought an extension of the mortgage maturity date from the Initial Lender. The Debtor was led to believe that an extension would be forthcoming, only to suddenly learn that the Initial Lender had sold the mortgage to the Current Lender, which then issued a notice of default and attempted to collect default interest and other charges retroactive to July 10, 2010.

In the interim, the Debtor was able to negotiate various one-year leases for the units at the Properties to provide short term income to the Debtor while it continued to market the Properties for sale. The Sale Contracts each provide for the purchase to assume any residential lease still in effect at the time of the closing.

Ultimately, the Debtor was able to negotiate the sale of all three Properties and obtain the written Sale Contracts from each of the proposed purchasers, replete with significant deposits currently held by the Debtorǿs pre-petition counsel, Chaim Dahan, Esq. The Sale Contracts were negotiated at arms-length and are believed to constitute fair market value for the units.

**B. Actions Taken During the Chapter 11 Case**

Shortly after the Chapter 11 filing, the Debtor contacted each of the purchasers and advised of the reasons why the bankruptcy petition had been filed. The Debtor understands that two of the purchasers, Puuito and Gao remain committed to the transactions and are currently reconfirming their financing with a view to closing on their Sale Contracts in July. The third buyer, BMH Consulting, may be on the fence due to issues relating to a mortgage commitment, although the Debtor is committed to keeping the contract in place, and will continue to communicate with BMH Consultingǿs counsel.

The Debtor is proceeding with private sales of the Properties, as permitted under Bankruptcy Rule 6004(f)(1), since the Debtor is already a party to the signed pre-petition contracts. Additional bidding, while theoretically possible, would subject the Debtor to potential rejection claims by the contract vendees under 11 U.S.C. §365(g), and not serve a meaningful economic benefit, even if the units could be sold for more, since the contract vendees would have damage claims for the difference. Thus, the Debtor is content to play it safe, so to speak, through assumption of the existing Sale Contracts which, taken together, will enable the Debtor to fund the Plan.

**C. Anticipated Objection to the Current Lender's Claim**

The Current Lender is asserting 24% default rate interest, amounting to some $615,000 in default interest alone through January 2021, as well as late charges of $450,000. The Debtor

intends to object to these charges on a number of grounds, with a formal objection to be filed prior to the hearing on confirmation of the Plan. Even if certain pre-petition default interest is allowed, equitable considerations come into play relating to disallowance of post-petition default interest under Section 506(b). The purported late fee of $450,000 constitutes an unenforceable penalty, and, moreover, in bankruptcy, a secured creditor is not entitled to both default interest and late fees under any circumstances.

In the meantime, the Current Lender is now openly hostile to the Debtor, and brazenly noticed a UCC foreclosure sale of the Properties for June 9, 2021, without leave of the Bankruptcy Court. The Debtor has put the Current Lender on notice that these actions violate the automatic stay and demanded a cancellation of the auction.

### D. Projected Sources and Uses of Cash

| **Sources of Cash** | | | Running Total |
|---|---|---|---|
| Address | Purchaser | Purchase Price | |
| 2 McGuinness | BMH Consulting LLC | $2,090,000.00 | |
| 4 McGuinness | Guang Gao, Nicholas Gao, Tiffany Chu | $2,350,000.00 | |
| | Teemu and Leila Puuito | $1,850,000.00 | |
| Total | | | $6,290,000.00 |
| | | | |
| **Claims:** | | | |
| Secured: | | | |
| | Current Lender (Undisputed) | $4,580,100.00 | $1,709,900.00 |
| | Real Estate Taxes | $21,000.00 | $1,688,900.00 |
| Priority | | | |
| | Brokerage | $251,600.00 | $1,437,300.00 |
| | Professional Fees | $100,000.00 | $1,337,300.00 |
| | U.S. Trustee Fees | $50,320.00 | $1,286,980.00 |
| Reserve | Current Lender (Disputed) | $1,170,400.00 | $116,580.00 |
| | | | |
| General Unsecured | | $906,400.00 | |

As is made clear from this chart, the final amount of the distribution to be made to general unsecured creditors will depend on the outcome of the Debtor's anticipated objection to the disputed portion of the Current Lender's claim.

## III. THE CONFIRMATION PROCESS

**A. Conditional Approval of this Disclosure Statement.**

Pursuant to 11 U.S.C. §105(d)(2)(B), this Disclosure Statement has been conditionally approved by the Bankruptcy Court (the "Disclosure Statement Order") as containing adequate information within the meaning of 11 U.S.C. §1125 necessary for creditors to (i) evaluate the Plan; and (ii) determine whether to object to confirmation of the Plan. Final approval of the Disclosure Statement will be sought by the Debtor in conjunction with actual confirmation of the Plan. The Court's preliminary approval of the Disclosure Statement is conditional, and creditors have the right to object to final approval of the Disclosure Statement, and to object to the Plan itself if they so elect.

**APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT AS TO THE FAIRNESS OR MERITS OF THE PLAN. THE DISCLOSURE STATEMENT IS NOT INTENDED TO REPLACE A CAREFUL REVIEW OF THE PLAN. THE DISCLOSURE STATEMENT IS INTENDED TO AID AND SUPPLEMENT THAT REVIEW.**

**B. FinalA. Approval of Disclosure Statement and Confirmation of the Plan.**

The Bankruptcy Court has scheduled a combined hearing pursuant to Sections 105 and 1128 of the Bankruptcy Codeconcurrent hearings to consider both final approval of this Disclosure Statement and confirmation of the Plan on the same day and time, to wit ______,August 4, 2021 at ________ __.10:30 a.m., prevailing Eastern Time. The hearing will be

conducted by telephone before the Honorable Alan S. Trust of the United States Bankruptcy Court, 290 Federal Plaza, Central Islip, New York 11722. Due to COVID-19, the hearing will be conducted telephonically. Parties wishing to participate in the hearing may do so using Dial in Number: 888-808-6929; Access Code: 2181522. by video conference pursuant to a separate Video Conference Order being served with this Disclosure Statement.

At the hearing, the Bankruptcy Court will determine whether the requirements of §1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an Order confirming the Plan. The Debtor believes that the Plan satisfies all applicable requirements of §1129(a) of the Bankruptcy Code.

In order for the Plan to be accepted on a consensual basis, each impaired class must accept the Plan. Here, because claims might not be paid in full, depending on final disposition of the Lender's claim, all Classes of Claims are now deemed impaired and eligible to vote on the Plan. Additionally, any creditor or party-in-interest may object to confirmation of the Plan or final approval of the Disclosure Statement. The Bankruptcy Court has directed that objections, if any, shall be filed with the Court no later than July 28, 2021 and served by email upon counsel to the Debtor, Kevin J. Nash, Esq. of Goldberg Weprin Finkel Goldstein LLP, 1501 Broadway, 22nd Floor, New York, New York 10036, knash@gwfglaw.com, and William Birmingham, Esq. of the United States Trustee 590 Federal Plaza, Central Islip, New York 11722, william.birmingham@usdoj.gov.william.birmingham@usdoj.gov. The hearing may be adjourned from time to time without further notice other than by announcement in open court.

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain events in the case and certain financial information. Although the

Debtor believes that the Disclosure Statement is accurate, the terms of the Plan govern, and creditors are advised to review the Plan in its entirety.

## IV. SUMMARY OF THE PLAN

A summary of the sources and uses of cash to be distributed at Closing and under the Plan predicated upon a sale of the Property is set forth in the below chart showing the anticipated proceeds from the sales of the Properties and the estimated distributions to creditors:

### A. Classification of Claims and Interests and Their Treatment Under the Plan

The Plan classifies Claims and Equity Interests into three (3) Classes, while providing for the payment of Allowed Administrative Expenses and Priority Claims as unclassified Claims.

**Unclassified Claims.** Pursuant to Section 1123(a) of the Bankruptcy Code, the Plan does not classify Administrative Expense Claims, Priority Claims or U.S. Trustee Fees, all of which shall be paid in full after allowance as required by 11 U.S.C. §1129(a)(9) from the monies on hand in the Confirmation Fund.

**Administrative Expenses**. Administrative Expenses consist of Professional Fees and any unpaid fees, costs and expenses incurred by the Debtor in maintaining the Properties during the Chapter 11 case and preparing for Closings. To the extent that any Administrative Expense has not been paid prior to Closing, each holder of Administrative Expenses shall be paid from the Confirmation Fund on the Effective Date.

**Brokerage.** The Sale Contracts were procured by the Debtorȇs pre-petition broker, Douglas Elliman Real Estate (ñDouglas Ellimanò) acting in conjunction with various co-brokers, pursuant to pre-petition brokerage agreements, which the Debtor views as executory contracts as well. Thus, as part of the Sale Motion, the Debtor has also sought authority to assume the pre-petition brokerage agreements and pay the gross commission of four (4%) percent under the Sale

Contracts amounting to $251,600 to Douglas Elliman, which in turn is expected to share a portion of its commissions with co-brokers according to its own agreements.

**Professional Fee Claims**. All requests for allowance of Professional Fees shall be filed no later than thirty (30) days after the Effective Date in accordance with 11 U.S.C. §330. After notice and a hearing, the allowed amounts of such Professional Fees shall be paid by the Disbursing Agent from the Confirmation Fund upon entry of an appropriate Order of the Bankruptcy Court awarding same.

**Priority Tax Claims**. All outstanding real estate taxes and related charges, if any, as well as any outstanding federal or state tax claim are classified as Priority Tax Claims for purposes of the Plan. Additionally, the IRS has filed a priority claim in the amount of $7,000. The claim is estimated and is disputed by the Debtor. Allowed Priority Tax Claims shall be paid in full no later than the Full Consummation Date. The Debtor reserves the right to reconcile and object to all Priority Tax Claims.

**U.S. Trustee Fees**. The Debtor is current with its quarterly fees to the U.S. Trustee. To the extent not otherwise paid, the Debtor shall pay all accrued U.S. Trustee Fees, together with any interest thereon, no later than the Full Consummation Date. U.S. Trustee Fees, together with any applicable interest, shall be paid until the Chapter 11 case is closed by entry of a Final Decree.

**B. Classification of Claims and Interests**.

The Plan classifies Claims and Interests against the Debtor consistent with the applicable provisions of the Bankruptcy Code.

**Summary**. The categories listed below classify Claims and Equity Interests against the Debtor for all purposes, including voting, confirmation and distribution pursuant to Sections 1122 and 1123(a)(l) of the Bankruptcy Code, as summarized below:

| Class | Designation | Impaired | Entitled to Vote |
|---|---|---|---|
| Class 1 | Lender | Potentially Yes, depending on final allowance of Lenderꞌs claim | Potentially Yes |
| Class 2 | General Unsecured Claims | Potentially Yes, depending on final allowance of Lenderꞌs claim | Yes |
| Class 3 | Equity Interest Holders | Yes | N/A |

**Classification, Treatment and Voting**.

**Class 1 – The Secured Claim of Lender**

(a) Classification: Class 1 consists of the allowed secured claim of the Lender.

(b) Treatment: The undisputed portion of the Lender's secured claim, consisting of principal and non-default rate interest shall be paid on a rolling basis at the respective Closings until such time as all undisputed amounts are paid in full but no later than the Full Consummation Date. At each of the Closings, the Lender shall execute and deliver a partial release or satisfaction of the Lenderꞌs mortgage, assignment of rents or any other collateral documents or instruments with respect to each of the Properties, even if the Lenderꞌs Claim is not paid in full. The Debtor shall escrow the disputed portion of the Lender's claim with the Disbursing Agent pending resolution of the Debtorꞌs intended objection to the Lenderꞌs claim. The Debtor also reserves the right to seek to subordinate the Lenderꞌs claim in whole or in part.

(c) Voting: The Class 1 claim of the Lender is potentially impaired, since partial releases are required for each of the Closings. The Lender is potentially eligible to vote on the Plan.

**Class 2 – General Unsecured Claims**

(a) Classification: Class 2 is comprised of Allowed General Unsecured Claims against the Debtor arising prior to the Petition Date.

(b) Treatment: Each holder of a Class 2 Allowed General Unsecured Claim shall be paid in an amount up to 100% of the holderǿs allowed General Unsecured Claim, and potentially with interest at the federal judgment rate promptly after the Full Consummation Date except for Disputed Claims, whereupon distributions shall be made to such creditor in accordance with the provisions of Article VI of the Plan. The Debtor currently projects that the Class 2 claims will total approximately $821,500, subject to the June 21, 2021 Bar Date and final reconciliation of claims. The amount of the final distribution will depend on final allowance of the Lenderǿs claim.

(c) Voting: Class 2 is impaired and General Unsecured Creditors are entitled to vote on the Plan.

**Class 3 – Equity Interests**

(a) Classification: Class 3 is comprised of the Equity Interest in the Debtor.

(b) Treatment: Tal August, as the Debtorǿs sole (100%) equity holder of the Debtor, shall retain his 100% membership interest in the Debtor and Reorganized Debtor. Mr. August shall also be entitled to receive any surplus proceeds remaining on deposit in the Confirmation Fund, after all allowed Claims and Administrative Expenses are paid in full.

(c) Voting: Class 3 is impaired, but ineligible to vote on the Plan as an insider.

**C. <u>Provisions For Implementation Of The Plan</u>.**

The Plan shall be implemented through the Closings under the respective Sale Contracts following entry of the Confirmation Order. The Debtor's counsel shall serve as Disbursing Agent, duly authorized to collect the respective sale proceeds and make distributions from the Confirmation Fund to the holders of allowed Claims and Administrative Expenses**.**

**Transfer of Property Free and Clear of Liens, Claims and Interests**. The Debtor's Sale Motion is hereby deemed incorporated by reference pursuant to 11 U.S.C. §1123, such that confirmation of the Plan shall also constitute approval of the respective Sales Contracts. Accordingly, pursuant to 11 U.S.C. §§ 363(b) and (f), 365 and 1123(a)(5), the Confirmation Order shall provide that the Debtor shall deliver marketable title to the respective Properties in accordance with the Sales Contracts, free and clear of all Claims, liens and interests, except subject to those leases at the Properties which remain in effect as of the Closing.

**Transfer Taxes**. The transfer of each of the respective Properties constitutes the making and delivery of an instrument of transfer contemplated and provided by the Plan within the meaning of 11 U.S.C. §1146(a). Accordingly, the transfer of each of the Properties to the buyers as designated under the Sale Contracts shall each be exempt from the payment of any stamp, deed, real estate transfer or other similar tax or governmental assessment, including NYC RPT and NYS TP584 (hereinafter the "Transfer Taxes"). The Confirmation Order shall recognize direct that the appropriate State and City of New York registries accept all deeds, instruments or other documents for filing and recording without the payment of Transfer Taxes.

**<u>Executory Contracts</u>**

**Sale Contracts**. In connection with the sale of the Properties, the respective Sale Contracts are each being assumed for purposes of the Plan in accordance with the Sale Motion.

**Leases**. Pursuant to Section 365 of the Bankruptcy Code, any existing residential lease that is in effect as of the respective Closings shall be deemed assumed in accordance with the Sale Motion as applicable, and shall be assigned to the respective purchaser consistent with the respective Sale Contract.

**Other Executory Contracts**. All other executory contracts, if any, pursuant to which the Debtor is a party, not previously rejected, shall also be deemed assumed as of the Effective Date in accordance with the provisions of 11 U.S.C. §365(a), with the Debtor to be responsible to cure any allowed arrears owed in connection therewith.

**D. Release And Exculpation**

**Binding Effect**. On the Effective Date, the terms of the Plan shall be immediately effective and enforceable and shall bind all holders of Claims against or Interests in the Debtor, whether or not such holders accept the Plan.

**No Discharge**. Pursuant to Section 1141(d)(3) of the Bankruptcy Code, neither the Plan nor confirmation thereof shall discharge any Claim against the Debtor except that the payment and receipt of distributions hereunder constitute a complete and binding settlement of all Claims against the Debtor.

**Injunction**. On and after Effective Date, all persons, firms or entities who have held, currently hold, or may hold Claims or Liens against the Debtor or the Properties are permanently enjoined from taking any of the following actions: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind against or affecting the Properties, on account of or in connection with or with respect to any such Claim or Lien other than as contemplated by the Plan; (ii) enforcing, levying, attaching, collecting or otherwise recovering by any manner or means whether directly or indirectly any judgment,

award, decree or order against the Properties on account of or in connection with or with respect to any such Claim or Lien; or (iii) commencing or continuing in any manner or action or other proceeding of any kind against the Properties on account of or in connection with or with respect to any such Claim or Lien.

**Exculpation**. As of the Effective Date and to the fullest extent allowed under applicable law, the Debtor and Disbursing Agent (together with their respective members, managers, officers, directors, agents and legal representatives) are hereby release and exculpated from any claim, obligation, cause of action or liability for any act taken or omission occurring in or after the commencement of the Chapter 11 case related to the Debtor or its Bankruptcy Estate, including but not limited to (i) formulating, preparing, disseminating, implementing, confirming, consummation or administering the Plan (including soliciting acceptances or rejections thereof); (ii) the submission of the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken during the administration of this Chapter 11 case or in connection with the Plan; and (iii) any distributions made pursuant to the Plan.

**E. Retention of Jurisdiction**.

The Bankruptcy Court shall retain jurisdiction until the bankruptcy cases are closed to adjudicate the following matters: (i) Ensure that the Plan is fully consummated; (ii) Resolve all matters arising under or relating to the Plan, including, without limitation, the enforcement, interpretation thereof, and any disputes relating to the sale and transfer of the respective Properties, including the assumption and assignment of certain residential leases; (iii) Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim; (iv) Grant or deny any applications for allowance of Professional Fee Claims

authorized pursuant to the Bankruptcy Code; (v) Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may still be pending on the Effective Date; (vi) Enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments and other agreements or documents created in connection with the Plan or to enforce all orders, judgments, injunctions, and rulings entered in connection with the bankruptcy cases; (vii) Issue any orders or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with consummation or enforcement of the Plan; and (viii) Enter an Order or Final Decree concluding the bankruptcy cases.

### F. Closing The Case

**U.S. Trustee Fees**. All U.S. Trustee Fees shall be paid until the actual closing of the bankruptcy case.

**Post-Confirmation Reporting**. The Debtor shall file a report with the Bankruptcy Court on a quarterly basis, reflecting disbursements made by or on behalf of the Debtor after entry of the Confirmation Order until the entry of a Final Decree closing this bankruptcy case.

**Closing the Case**. The Disbursing Agent shall move for the entry of a Final Decree closing this bankruptcy case upon substantial consummation of the Plan.

## V. REQUIREMENTS FOR CONFIRMATION OF THE PLAN

Under Bankruptcy Law, a plan can be confirmed if it is accepted by all classes of unimpaired claims and otherwise meets the requirements of 11 U.S.C. § 1129(a).

The requirements of Section 1129(a) include determinations by the Bankruptcy Court that: (i) the Plan complies with all provisions of the Bankruptcy Code, (ii) the Debtor has

proposed the Plan in good faith, (iii) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan, (iv) the Plan is in the ñbest interestò of all creditors, as may be applicable, and (v) the Plan is feasible.

The Debtor believes that the Plan here meets with the requirements of the Bankruptcy Code and, has been proposed in good faith. The Debtor believes that the Purchasers are all creditworthy buyers, and once the respective sales of the Properties are completed, the Debtor will have sufficient funds to make distributions hereunder.

The successful closings will allow the Debtor to comply with the ñbest interestò test under 11 U.S.C. §1129(a)(7), which essentially requires that creditors be paid at least as much as they would receive in a liquidation under Chapter 7. Since all of the net sale proceeds are being used to pay claims in compliance with the priority structure established by the Bankruptcy Code, creditors will receive more than they would in a Chapter 7, under which a trustee would conduct the same sales but add another layer of administrative expenses ahead of pre-petition creditors.

Dated: New York, NY
~~June 9~~July 1, 2021

BK4 LLC

~~GOLDBERG WEPRIN FINKEL~~
~~***GOLDSTEIN***~~Goldberg Weprin Finkel Goldstein LLP
Attorneys for the Debtor
1501 Broadway, 21st Floor
New York, NY 10036

By: /s/ Tal August, Manager

By: /s/ Kevin J. Nash, Esq.

Formatted: Heading 2, Justified

Formatted: Font: Not Bold, Not Italic